**In re Brian H. MADDEN, a/k/a Brian Harold Madden, Debtor.**

**Robert L. PRYOR, Trustee, Estate of Brian H. Madden, a/k/a Brian Harold Madden, Plaintiff,**

**v.**

**BASVIS REALTY CORP.; 142–150 Jericho Partners; J. Michael Hammer; Marguerite Carney; the Bank of New York; and Brian Madden, Defendants.**

**Bankruptcy No. 889–91727–20.**
**Adv. No. 890–8286–20.**

United States Bankruptcy Court,
E.D. New York,
at Westbury.

Nov. 22, 1994.

Robert L. Pryor, Chapter 7 Trustee, Pryor & Mandelup, Garden City, NY.

Andrew M. Thaler, Goldman, Horowitz & Cherno, Mineola, NY, for Chapter 7 Trustee.

Kevin M. Walsh, Spellman & Walsh, Garden City, NY, for Marguerite Carney.

Sacks, Bernstein & Greenspan, Garden City, NY, for Basvis Realty Corp.

Cullen & Dykman, Brooklyn, NY, for Bank of New York.

## DECISION AND ORDER ON MOTION AND CROSS–MOTION FOR SUMMARY JUDGMENT

ROBERT JOHN HALL, Bankruptcy Judge.

### PRELIMINARY STATEMENT

Before the Court[1] is the Trustee's motion ("Motion") for summary judgment, granting the relief requested in his Adversary Proceeding. One defendant, Marguerite Carney ("Carney"), opposed the Motion by filing a cross-motion for summary judgment. Both motions were made pursuant to Federal Rule of Civil Procedure 56. The central issue focuses upon who, as between the Trustee and Carney, holds the superior interest in Debtor's share in a partnership.

### RELEVANT FACTS

On or about June 24, 1987, Basvis Realty Corp., an above-captioned defendant ("Basvis"), purchased certain real property located at 142–150 Jericho Turnpike, in Mineola, New York ("Property") from 142–150 Jericho Partners, also an above-captioned defendant ("Jericho Partners"). At the time of the transaction, Jericho Partners was a New York partnership with Brian Madden, the above-referenced debtor ("Debtor") and J. Michael Hammer ("Hammer") as the sole general partners.

In connection with the sale of the Property, Basvis executed a promissory note, dated June 24, 1987 ("Note"), providing for payment of the sum of $100,000.00 to Jericho Partners. Basvis also executed a mortgage on the Property in favor of Jericho Partners to secure payment of the indebtedness ("Mortgage"). The Note and Mortgage were delivered to Jericho Partners.

On or about September 23, 1988, in an unrelated action entitled, *The Bank of New York v. Brian H. Madden, Individually, J. Michael Hammer, Individually, Joseph Reeseman, Individually, Linda Reeseman, Individually, et al.* (Index No. 9923/88), The Bank of New York ("BONY") acquired a default judgment against Debtor and Hammer in the amount of $859,400.00 ("Judgment"). BONY then filed a petition pursuant to section 54 of New York Partnership Law ("Petition") to charge the interests of Debtor and Hammer in Jericho Partners with satisfaction of the Judgment entered against them individually. The Honorable Kenneth D. Molloy, Justice of the Supreme Court of New York, Nassau County, granted the Petition by Memorandum Decision dated April 20, 1989. Apparently, an order was required to be subsequently submitted by BONY.

By document dated May 26, 1989, BONY assigned the Judgment to Marguerite Carney.

On September 20, 1993, the Nassau County Supreme Court entered an order in furtherance of Justice Molloy's Memorandum Decision, and granted BONY a charging interest in Jericho Partners to the extent of Hammer's interest in therein ("Charging Order"). The Charging Order was granted in connection with proceedings held in the Nas-

---

1. The Court has jurisdiction over this case pursuant to sections 1334, 157(a) and 157(b)(1) of title 28, United States Code ("title 28") and the order of referral of matters to the bankruptcy judges by the United States District Court for the Eastern District of New York (Weinstein, C.J., 1986). This is a core proceeding pursuant to section 157(b)(2)(A), (K) of title 28.

sau County Supreme Court's Individual Assignment System, on October 16, 1993. The Charging Order did not grant Carney any rights with respect to Debtor's interest in Jericho Partners.

## DISCUSSION

■ Pursuant to the Adversary Proceeding and Motion, the Trustee seeks, among other relief, judgment determining the nature, extent and validity of all liens in Jericho Partners, and in the partnership's asset, the Note and Mortgage. Trustee maintains that his interests in both Jericho Partners and the Note and Mortgage are superior to that of Carney. Carney filed opposition, which is detailed below.

■ Debtor's interest in Jericho Partners is personal property. N.Y. Partnership Law § 54. This personal property is property of Debtor's chapter 7 bankruptcy estate. 11 U.S.C. § 541(a)(1) (an estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case).

The Trustee's rights in the personal property which comprises Debtor's bankruptcy estate are equivalent to the rights of a creditor holding a judicial lien in such property, obtained on the date the bankruptcy case was commenced. *Id.* § 544(a)(1).

Carney's rights in Jericho Partners at best equate to a creditor with an unperfected lien. A Memorandum Decision of New York's Nassau County Supreme Court granted BONY the right to charge Debtors's interest in Jericho Partners with satisfaction of Debtor's obligation to Carney; the Memorandum Decision was dated April 20, 1989. Carney became BONY's assignee on May 26, 1989. Between May 26, 1989, and September 20, 1993, the date Debtor filed his voluntary petition for bankruptcy relief, Carney stood on her rights. Carney never filed with the Nassau County Supreme Court an order or judgment embodying the relief narrated in the Memorandum Decision.

Carney's rights in Debtor's partnership interest in Jericho Partners have butted with Trustee's rights in the same property. Carney holds no lien or security interest in the property; at best, Carney holds an unperfected charging interest. Trustee's interest, pursuant to the hypothetical lien given him by section 544(a)(1), is superior to Carney's.

Carney raises two points in opposition. First, Carney maintains that "the automatic stay provision of § 362 of the Bankruptcy Code precluded the submission of an order charging the interest of Madden." Carney's Memo. L. at 11 n. 1.

This contention is offensively disingenuous. Justice Molloy's Memorandum Decision was dated April 20, 1989; Carney became BONY's assignee on May 26, 1989; Debtor filed a bankruptcy petition on September 20, 1993. Ostensibly, Carney had four years and four months to file and procure an order or judgment embodying the relief set forth in the Memorandum Decision.[2] No excuse for this neglect was proffered to the Court in papers or at oral argument. It is dishonest to state that Carney's failure to file an order or judgment for more than four years derived from the automatic stay created by Debtor's bankruptcy petition.

■ Carney also maintains:

The Trustee argues that since an order was never submitted charging the interest of Madden, the filing of the bankruptcy petition by Madden invoked the strong arm provisions of § 544 of the Bankruptcy Code thereby perfecting the Trustee's interest in Madden's interest in the partnership.

It is *respectfully submitted that the submission of a formal order was a ministerial act and that the memorandum decision* of the Honorable Kenneth D. Molloy, dated April 20, 1989, *sufficiently perfected Carney's interest* in Madden's interest in Jericho Partners.

---

**2.** Trustee notes that Carney in fact had less time to act under state law. New York Uniform Rule 202.48(a) required that an order or judgment be submitted within sixty days of the Memorandum Decision; thereafter, the action is deemed abandoned, N.Y.Unif.R. 202.48(b). Trustee's Memo. L. at 9. Note also that Carney might have been the recipient of a voidable preference were she to have received the order within 90 days of debtor's bankruptcy petition. *See* 11 U.S.C. § 547(b).

Carney's Memo. L. at 11 (emphasis added). Carney's respectfully submitted contentions were not supported by any citation to legal authority. We will address them briefly.

The Court previously had cause to discuss the clash between a ministerial act and the automatic stay. *In re Capgro Leasing Assocs.*, 169 B.R. 305, 314–16 (Bankr.E.D.N.Y. 1994) (citations given). Our research in the *Capgro* case lead to our finding of a definition for a ministerial act. *Id.* But no definition for the term would include the filing by a party of a document after the commencement of a bankruptcy case, which gives that party a charging lien against estate property. *See id.*; 11 U.S.C. § 362(a)(1), (2), (3), (4), (5). Such an act by Carney would transform her rights in Jericho Partners from nonexistent to existent. This is plainly not a ministerial act. *Capgro*, 169 B.R. at 314–16.

We turn next to Carney's submission that the Memorandum Decision "sufficiently perfected ... Carney's interest in [Debtor's] interest in Jericho Partners." Carney's Memo. L. at 11. The Court has not been apprised whether a charging order would have granted Carney with the mere right to look to Jericho Partners' property for satisfaction of Debtor's obligation to her, or would have constituted a perfected *lien* in Jericho Partners' assets. If a charging order only gave Carney the right to look to partnership property, but no lien therein, her interests would still be inferior to the Trustee. In that case, neither the Memorandum Decision nor an order or judgment which enforced the Memorandum Decision would have aided Carney. Nevertheless, looking to the results in the instant case were Carney to have obtained an order or judgment are interesting, but are irrelevant. No order or judgment was ever obtained.

We cannot render a decision or order which puts Carney in the same position she would have been had she timely pursued her rights. It is simply not legally plausible for a bankruptcy court to hold that a party has a charging *lien* in property pursuant to a state court's memorandum decision. The ruling would be unfair to all creditors with unsecured claims against Debtor's estate. Creating a lien in this way would turn the law of security interests on its head.

## CONCLUSION

For the foregoing reasons, the Court holds that Carney has no interest in Jericho Partners, and that the Trustee stands as a creditor that owns a judicial lien upon the personal property which represented Debtor's 50% partnership interest in Jericho Partners.

 In the Adversary Proceeding, Trustee also demanded: recovery of judgment against Basvis Realty Corp. pursuant to the Note and Mortgage; dissolution of Jericho Partners; and an accounting of partnership property. Carney was the only party that filed opposition to these demands made within the Adversary Proceeding. Carney has no interest in Jericho Partners; therefore, Carney has no standing. Accordingly, the Court holds that: **JUDGMENT** is to be rendered **AGAINST** Basvis Realty Corp. for the amount due and unpaid under the Note and Mortgage; Hammer is **DIRECTED** to file with the Court and serve upon Trustee an **ACCOUNTING** on or before December 9, 1994; Trustee may file an accounting and may do such acts as are consistent with dissolution and wind-up of the Jericho Partners partnership; Trustee has leave to file a motion for authority to sell the estate's interest in the Note and Mortgage, or other property of Jericho Partners, either free and clear of any interest in such property of an entity other than the estate, or to sell the estate's interest in such property as well as the interest of any co-owner of such property, 11 U.S.C. § 363(f), (h); all other requests for relief are **DENIED;** Trustee shall **SETTLE A JUDGMENT** which incorporates the provisions of this memorandum decision and order and, if appropriate, which closes the Adversary Proceeding; the judgment shall be noticed for presentment to the Court on or before December 21, 1994, on seven business days' notice to the appropriate parties, and shall require proposed counter-judgments to be filed and served not later than two days before the settlement date.

**SO ORDERED.**